HALL, Judge.
Mack Shaw, an employee of the defendant railway company was run over and killed by one of defendant’s trains on August 1, 1956. Alleging that the accident was caused by defendant’s negligence, Shaw’s widow, as administratrix of the estate, brought this suit in the Civil District Court for the Parish of Orleans for damages under the provisions of the Federal Employers’ Liability Act (45 U.S.C.A. § 51 et seq.) for her own individual benefit and for the benefit of the two minor children of her marriage with decedent.
The defendant filed an exception to the jurisdiction which was overruled. After answer filed, the case was tried on the merits before a jury which rendered a verdict in plaintiff’s favor for $50,000.00. *876 Judgment was rendered in conformity with the jury’s verdict and defendant appealed.
The main contention of defendant on appeal is that the Trial Court erred in overruling its exception to the jurisdiction. Defendant argues that the concurrent jurisdiction conferred on State Courts by the Federal Employers’ Liability Act to try cases arising under that Act is not mandatory, but permissive only, and that under Louisiana Law the Courts of this State are without jurisdiction rationale materiae over a cause of action brought against a foreign corporation doing business in this State when that cause of action arises in a foreign State.
In the instant case the record reveals that the defendant railway company is domiciled at Dallas, Texas, but that it is authorized to do and is doing business in Louisiana with a resident of New Orleans as its registered agent for service of process, and that service of process was made on that agent. The record further reveals that the accident which resulted in Shaw’s death happened in the State of Texas.
The Federal Employers’ Liability Act provides:
“§ 56. Actions; limitations; concurrent jurisdiction of courts
“No action shall be maintained under this caption unless commenced within three years from the day the cause of action accrued.
“Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall he doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.” (45 U.S.C.A. § 56) (Emphasis supplied)
It is well settled that the concurrent jurisdiction granted by Congress to the State Courts of causes of action arising under the Federal Employers’ Liability Act does not enlarge or regulate the jurisdiction of the State Courts. See Herb v. Pitcairn, 324 U.S. 117, 65 S.Ct 459, 89 L.Ed. 789, and cases there cited. The jurisdiction of the State Courts is to be determined by the law of the State where the action is brought, provided of course such law is not discriminatory.
Our Supreme Court has held that the Courts of this State have no jurisdiction over non-resident corporations authorized to transact business in this State in cases where the cause of action arises outside of the State and does not grow out of or is unconnected with the business done by the corporation in this State. See Staley-Wynne Oil Corporation v. Loring Oil Corporation, 182 La. 1007, 162 So. 756; W. H. Hodges & Co., Inc. v. Pennsylvania R. Co., 171 La. 699, 132 So. 115; Harnischfeger Sale Corp. v. Sternberg Co., 179 La. 317, 154 So. 10. None of these cases arose out of a cause of action under the Federal Employers’ Liability Act.
The decisive issue presented here is whether this action grows out of or is connected with the business done by the defendant in Louisiana. See Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711.
The record shows that Mack Shaw was employed by the defendant in the State of Louisiana in the year 1944 as crew cook on a work train and continued in that employment until his death; that the first work performed by Shaw as an employee of defendant was in the Parish of St. Landry, Louisiana; that subsequently the duties of his employment were carried out on defendant’s lines both in the State of Louisiana and in the State of Texas, a substantial portion of his duties being performed in the State of Louisiana; and *877 that from the time he entered the employ of the defendant until the time of his death his domicile was maintained in the Parish of St. Landry, Louisiana.
The cause of action herein sued on is created by the Federal Employers’ Liability Act. It is sui generis. It is neither a tort action nor a workmens compensation action, although it resembles both in some respects. It resembles a tort action in the respect that negligence must be shown and damages instead of compensation are awarded. However, it has its own prescriptive period, the common law defenses are either abolished or modified, and the action is available only to employees of the defendant.
The action is unlike one for workmens compensation since negligence must be shown and damages are awarded, but like the action for compensation it is based on employment.
Considering the fact that the basis •of this action is employment, considering the fact that the decedent was employed by the defendant railroad in this State, and considering the fact that he was hired to perform and did perform a substantial part of his duties in this State, we are of the opinion that although the accident happened in the State of Texas, the cause of action grows out of Mack Shaw’s employment in this State and is connected with the business done by defendant in this State. We are therefore of the opinion that the Trial Court properly overruled the exception to the jurisdiction.
Although defendant’s main reliance is on its exception to the jurisdiction it contends that no evidence was presented which established that any negligence on its part was in any way causally connected with the death. Defendant also contends that the Trial Court erred in permitting the witness Weldon J. Reuther to testify as an expert; that the Court erred in instructing the jury concerning res ipsa loquitur; and that the award of damages is excessive.
The deceased came to his death while employed as a cook on one of defendant’s work trains. The “train” consisted of several old cars, passenger and freight, containing living facilities for the crew and storage facilities for tools and equipment. It was customarily moved from one location to another by being attached to the rear of scheduled freight trains, and on the night of August 1, 1956 it was attached to a freight train which was proceeding from the Dallas, Texas yards to Mineóla, Texas, a station about 95 miles east of Dallas. Decedent’s body was discovered on defendant’s railroad right-of-way and train tracks approximately 12 miles east of Dallas on the morning of August 2, 1956.
Although there were no eyewitnesses to the accident the physical facts show conclusively that decedent in some manner had fallen between the dining car of the work train and a stripped down box car coupled immediately behind the dining car and that his body had been run over and mangled by the wheels of the box car.
The dining car was an old coach divided into three compartments: the forward compartment was used as a kitchen, the middle compartment served as the dining area and compartment at the rear end of the car was used by the deceased cook as a bed room. The stripped down box car coupled to the rear of the dining car contained wood and coal for the cook stove and a gasoline powered generator used to furnish electricity to the work train.
In the course of his cooking duties deceased was required at times to pass from the dining car to the box car to get fuel for the cook stove. His duties also required him to enter the box car for the purpose of starting and stopping the generator. Also, as the dining car had no toilet facilities and the car immediately in front was kept locked by the superintend *878 ent, the deceased in order to relieve him-? self while the car was in motion had to do so either between the cars, or pass onto the stripped down box car to do so.
There was no platform between the dining car and the box car, just an open gap over the coupling about two feet wide. A 2" x 12" plank extending from the doorway of the box car partially over the gap between the cars was used as a step in passing from one car to the other. There were no hand holds, guard rails, floor boards or side boards to aid or protect a person in making this passage. Clearly this was a dangerous and hazardous condition which could have been remedied easily by installing a floor and walls or hand rails between the cars.
When last seen alive, Shaw had just finished serving the evening meal to the crew. When the meal was over he was left alone in the dining car where he slept. He was not missed until breakfast time the next morning after the train had arrived at Mineóla. The train had not stopped between Dallas and. the place where the pieces of his body were found.
In an exhaustive and well reasoned opinion the Trial Judge said in part:
“ * * * The evidence showed that the accident occurred during the night or early morning while the work cars were attached to a long freight train. A witness testified that when the cars were hooked onto a freight train that it was an extraordinarily rough ride especially on the hills and ridges in that area. Pieces of decedent’s flesh were found under the box car immediately behind the car in which he had his quarters. Blood appeared on the wheels of the same car. One could easily and logically conclude that decedent had somehow fallen between his car and the one immediately behind. On the other hand, it could be argued that he jumped or was pushed, but there is not a sentilla of evidence to support that theory. As he was required from time to time to go to the car behind to tend the generator or get wood for his cooking stove, and to relieve himself, he could have been jarred and thrown between the coaches to his death * * *. Under all the circumstances and facts presented to the jury they could draw a reasonable inference, without resort to arbitrary conjecture or speculation, that in attempting to pass between these cars that the decedent slipped or was jarred by the train and fell between the coaches. The employer’s negligence in not providing him a safe place to work was a substantial contributing cause to his having fallen.”
We agree with the District Judge that the record is devoid of any other explanation of the accident and that the evidence of causal connection between the accident and defendant’s negligence in not providing defendant a safe place, to work could not be more convincing.
The decisions under the Federal Employers’ Liability Act are clear to the effect that if a jury can reasonably infer from all of the circumstances presented to them that the death was in some way connected with some negligence of the defendant, no matter how slight, the jury’s verdict must stand. See Tenant v. Peoria & P. U. Railroad Company, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944); Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Rogers v. Missouri Pacific Railroad Company, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618; Dennis v. Denver & Rio Grande Western Railroad, 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256; Shenker v. Baltimore & Ohio Railroad, 374 U.S. 1, 3, 83 S.Ct. 1667, 10 L.Ed.2d 709; Basham v. Pennsylvania Railroad Co., 372 U.S. 699, 83 S.Ct. 965, 10 L.Ed.2d 80.
*879 Defendant’s contention that the Court erred in permitting the witness Weldon J. Reuther to testify as an expert is not well founded. Reuther has been a railroad car inspector for twenty-four years. Apparently defendant’s objection is that Reuther was not qualified as an expert on “work trains”. It is not shown wherein that fact would make a difference. Moreover the testimony from other witnesses is Teplete with observations as to the lack of Rand rails, floor boards and other safety ■devices in the area where Shaw had to work. It required no expert testimony for the jury to conclude that the area where ■deceased was required to work was unsafe.
Defendant urges as error that the 'Trial Court instructed the jury concerning res ipsa loquitur. The Trial Judge’s charge to the jury correctly described the doctrine res ipsa loquitur and clearly warned the jury that “the application of the rule does mot, therefore, dispense with the necessity that plaintiff prove negligence.” We find mo prejudicial error in such charge. Even in the absence of an instruction regarding the doctrine of res ipsa loquitur the jury •could well have reached the conclusion they •did.
Defendant contends that the award of .$50,000.00 is excessive. The deceased was earning $3,395.61 per annum at the time of Ris death. He was 52 years old and it was stipulated that he had a life expectancy of 11 (sic) years. He was the sole support •of his wife and his two children, aged 1 and 2 at the time of his death.. Defendant suggests that the maximum reasonable expectation of pecuniary loss on the part of his dependents was 11 x $3,395.61 or $37,371.71, before discount.
The measure of damages in an action under the Federal Employers’ Liability Act is governed by the jurisprudence of the Federal Courts. See Simmons v. Louisiana Ry. & Nav. Co., 149 La. 686, 90 So. 24. The Federal jurisprudence is well settled to the effect that the damages recoverable in a death action under the act are limited to such loss as results to the dependent relatives named in the act because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee, and the damage is limited to the financial loss sustained. Damages for loss of love and affection, for mental anguish or for loss of companionship and society are not recoverable. See citations listed in 45 U.S.C.A. § 51, Note No. 1556 at page 844 and Note No. 1559 at page 848. There is no mathematical formula for computing damages. The jury may consider but is not bound by actuarial tables.
Defendant concedes that the Trial Court charged the jury correctly in respect to the measure of damages recoverable. Such being the case, in the absence of a verdict so excessive as to indicate prejudice or passion an appellate court is obliged to accept the jury’s verdict. See: Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh, 5 Cir., 179 F.2d 880; Reid v. Nelson, 5 Cir., 154 F.2d 724; Earl W. Baker & Co. v. Lagaly, 10 Cir., 144 F.2d 344, 154 A.L.R. 1098; St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949; Fort Worth and Denver Railway Company v. Harris, 5 Cir., 230 F.2d 680; Hayes v. New York Central Railroad Co., 2 Cir., 311 F.2d 198.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.